FEE DUE
N/S

FILED
CLERK, U.S. DISTRICT COURT
09/10/2026
CENTRAL DISTRICT OF CALIFORNIA
BY mba DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFONIA – EASTERN DIVISION

**NICHOLAS A. VENTURA,**

Plaintiff,

v.

AMGEN, INC., a Delaware corporation; DAVID DRASEN, as agent of Amgen, Inc.; CAUVERY KANADE, as agent of Amgen, Inc.;; AND DOES 1—50

Defendants

**COMPLAINT FOR DAMAGES**

5:26-cv-05259-JGB (ACCVx)

1. Discrimination (FEHA — Cal. Gov. Code § 12940)
2. Discrimination in Contracting (42 U.S.C. § 1981)
3. Conspiracy to Deprive Civil Rights (42 U.S.C. § 1985(3))
4. Unfair and Fraudulent Business Practices (Cal. Bus. & Prof. Code §§ 17200, 17500)
5. Interference with Prospective Economic Relations (California Common Law)
6. Intentional Infliction of Emotional Distress (California Common Law)

Jury Trial Demanded

Date: **09/10/2026**

Nicholas A.Ventura

*Nicholas A. Ventura*

## INTRODUCTION

Plaintiff Nicholas A. Ventura, appearing in pro se, brings this action against Defendant Amgen, Inc. and individual Defendants David Drasen and Cauvery Kanade for a pattern of racially and disability-motivated discrimination in hiring, civil rights conspiracy, unfair and fraudulent business practices, tortious interference with prospective economic relations, and intentional infliction of emotional distress. The conduct alleged herein spans from 2019 through August 22, 2024, and encompasses: (a) the systematic exploitation of Plaintiff's intellectual labor through a client-facing consulting engagement while denying him direct employment; (b) thirty-three (33) documented applications returned without a single interview across more than five years; (c) the concurrent hire of Plaintiff's lesser-qualified colleagues, team members, and mentees into the very roles for which Plaintiff was denied consideration; (d) fraudulent job posting practices designed to perpetuate the appearance of open recruitment while foreclosing Plaintiff from genuine consideration; (e) an active referral engagement in February 2024 in which an Amgen employee scheduled a call with Plaintiff regarding an open role, directed Plaintiff to apply, and then ceased all communication after the ATS denied Plaintiff's application on the morning of the scheduled call; and (f) an employer-initiated introduction meeting in August 2024 that was abandoned without explanation, offer, or referral.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) based on Plaintiff's claims arising under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3).

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claims under California Government Code §§ 12940 et seq. (FEHA), California Business and Professions Code §§ 17200 and 17500 (UCL), and California common law claims for Tortious Interference with Prospective Economic Relations and Intentional Infliction of Emotional Distress, as these claims are so related to Plaintiff's federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, including Defendant Amgen's hiring decisions, the competitive intelligence consulting engagement serving Amgen's accounts, and the submission and disposition of Plaintiff's applications through Amgen's career portal.

4. Assignment to the Eastern Division is proper pursuant to Central District of California is proper pursuant to Central District of California Local Rule 83-1.3 because Plaintiff resides in Chino Hills, California, within the County of San Bernardino, which falls within the Eastern Division of this Court.

**PARTIES**

5. Plaintiff Nicholas A. Ventura ("Plaintiff" or "Ventura") is an individual residing at 16232 Promontory Road, Chino Hills, California 91709, in the County of San Bernardino. Plaintiff is Hispanic/Latino, Male, and has a documented disability consisting of mild-to-moderate Depression and Anxiety (hereinafter "Mental Health Issue"), qualifying as a mental disability within the meaning of California Government Code §§ 12926(j) and 12926.1.

6. Defendant Amgen, Inc. ("Amgen" or "Defendant") is a Delaware corporation with its principal place of business at One Amgen Center Drive, Thousand Oaks, California 91320. Amgen regularly employs more than five (5) persons and is an "employer" within the meaning of California Government Code § 12926(d).

7. Defendant David Drasen ("Drasen") is an individual who, at all relevant times, was employed by Amgen, Inc. in a management or supervisory capacity, serving as a primary client-side contact and supervisor of competitive intelligence deliverables produced by Plaintiff through the Lifescience Dynamics Limited LLC consulting engagement. Drasen is sued individually and in his capacity as an agent of Amgen.

8. Defendant Cauvery Kanade ("Kanade") is an individual who, at all relevant times, was employed by Amgen, Inc. in a management or supervisory capacity, serving as a client-side contact overseeing Plaintiff's work product produced through the Lifescience Dynamics

consulting engagement. Kanade is sued individually and in her capacity as an agent of Amgen.

9. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named Defendant is responsible in some manner for the acts, conduct, and damages alleged herein, including without limitation members of Amgen's Human Resources department, recruiting personnel, and additional Amgen employees involved in the application review and hiring decisions at issue. Plaintiff will amend this Complaint to allege the true names and capacities of the Doe Defendants when ascertained through discovery.

10. At all relevant times, each Defendant acted as the agent, servant, or employee of each others Defendant, and acted within the course and scope of that agency, service, or employment with the knowledge and/or ratification of each other Defendant.

**PLAINTIFF'S EXHAUSTION OF PROCEDURAL REMEDIES**

11. Plaintiff timely filed a verified complaint with the California Civil Rights Department ("CRD") on April 14, 2025, Case No. 202504-28952914, alleging discrimination on the basis of race, national origin, disability, and sex, and conspiracy to exclude Plaintiff from employment despite his having served as a consultant to agents of Defendant for a continuous period of approximately two years.

12. The CRD issued a Right to Sue letter under CRD Matter No. 202510-31990330 on or about October 30, 2025. A true and correct copy of the Right to Sue letter is attached hereto as Exhibit G and incorporated herein by reference.

13. This Complaint is filed within one year of the issuance of the CRD Right to Sue letter, in compliance with California Government Code § 12965(b). All administrative prerequisites applicable to Plaintiff's FEHA claims have been satisfied.

## FACTS

### I. PLAINTIFF'S QUALIFICATIONS AND PROFESSIONAL BACKGROUND

14. Plaintiff holds a Bachelor of Science in Cell, Molecular, and Developmental Biology from the University of California, Riverside (awarded 2017) and a Master of Business and Science ("MBS") in Biotechnology Management from Keck Graduate Institute ("KGI") (awarded 2019).

15. During and following his graduate education, Plaintiff acquired substantial and documented experience in market research, global competitive intelligence, market access, data analysis and visualization, and health economics and outcomes research ("HEOR") through: (a) student consulting engagements at KGI; (b) an internship with Roche Tissue Diagnostics / Ventana Medical Systems; (c) professional employment at Lifescience Dynamics Limited LLC, where Plaintiff was promoted from Junior Business Analyst to Business Analyst; and (d) professional employment at Syneos Health, Inc.

16. At all relevant times, Plaintiff met the minimum and preferred qualifications as published for each of the approximately thirty-three (33) positions to which he applied at Amgen between January 2024 and August 2024.

### II. DISCRMIINATORY CONDUCT DURING AND FOLLOWING PLAINTIFF'S KGI ENROLLMENT

17. Prior to his professional engagement with Lifescience Dynamics, and while enrolled as a graduate student at KGI, Plaintiff participated in a panel interview for Amgen's Graduate Development Program. The panel consisted of two Amgen representatives: a KGI alumnus of South Asian descent, Watita Real, and a Caucasian female.

18. During the panel interview, neither interviewer directed a single substantive question to Plaintiff throughout the entirety of the interview.

19. All substantive interview questions were directed exclusively to one other candidate, a Caucasian male, who was subsequently selected for the Graduate Development Program position.

20. The panel interview and selection process reflected a predetermined hiring decision in which Plaintiff was afforded no meaningful or genuine opportunity to demonstrate his qualifications.

21. During Plaintiff's enrollment at KGI, Plaintiff participated as the primary contributing member of a four-person team in the Applied Entrepreneurship course, working with Claremont Biosolutions on a commercial development project. Plaintiff's teammates were Tim Tran, Richie Chan, and Tarundeep Singh Kalsi. Richie Chan and Tarundeep Singh Kalsi are identified herein as individuals with personal knowledge of team member contributions throughout the engagement.

22. Tim Tran contributed materially nothing to the four-person team project throughout the duration of the Applied Entrepreneurship engagement.

23. Notwithstanding his documented lack of contribution to the KGI team project, Tim Tran subsequently obtained employment with Defendant Amgen, Inc. in the role of Commercial Forecasting Manager — a role within Amgen's commercial analytics function for which Plaintiff's qualifications were objectively and substantially superior.

24. Plaintiff, who performed the primary substantive analytical and commercial work of the KGI team project and whose academic and professional profile substantially exceeded Tim Tran's, was denied employment at Amgen across thirty-three (33) documented portal applications submitted during the same post-graduation period.

25. While enrolled at KGI, Plaintiff was assigned as a peer mentor to an underclassman ("[KGI MENTEE NAME]," identity known to Plaintiff and to be further identified through discovery) who, upon graduating from KGI, obtained employment with Defendant Amgen, Inc. shortly thereafter — despite Plaintiff's earlier graduation, superior qualifications, and substantially more extensive industry-facing experience.

## III. THE LIFESCIENCE DYNAMICS ENGAGEMENT AND EXPLOITATION OF PLAINTIFF'S LABOR

26. From approximately June 2019 to April 2021, Plaintiff employed at Lifescience Dynamics Limited LLC, initially as a Junior Business Analyst and subsequently promoted to Business

Analyst by his direct supervisor, Peter Kelly.

27. During this engagement, Plaintiff was assigned as the primary resource on Defendant Amgen, Inc.'s competitive intelligence accounts. Plaintiff reported directly to Amgen client contacts David Drasen, Nikta Jaberzadeh, and Cauvery Kanade — all employees of Amgen, Inc.

28. Plaintiff covered more therapeutic areas than any other analyst on the Amgen engagement, produced a higher volume of work product than his colleagues, and contributed directly to Amgen's strategic decision-making through daily intelligence reporting, quarterly competitive analysis, and coverage of medical and scientific conferences.

29. Plaintiff's work product was received, reviewed, directed, and actively utilized by Defendant Drasen, Defendant Kanade, and other Amgen personnel as part of Amgen's ongoing commercial and competitive intelligence operations.

30. Defendant Drasen, as Plaintiff's primary Amgen-side contact throughout the Lifescience Dynamics engagement, had direct, sustained, and documented personal knowledge of Plaintiff's qualifications, analytical capabilities, industry knowledge, and professional contributions.

31. Despite this direct, sustained professional relationship — through which Amgen received the benefit of Plaintiff's intellectual labor and industry expertise, Drasen's promotions — Defendants failed and refused to facilitate, support, refer, or recommend Plaintiff for any Amgen employment opportunity during or following the Lifescience Dynamics engagement.

32. During and following the Lifescience Dynamics engagement, the following individuals, who worked alongside or in capacities subordinate to Plaintiff on Amgen-facing accounts, were hired directly into Amgen roles:

a. Daisy Haight (English/Caucasian), hired into a role at Amgen that Plaintiff had been working toward and for which his qualifications were objectively documented;

b. Ezequiel Heredia (Caucasian, from Spain), hired into an Amgen Medical Director capacity; and

c. Maria Angeles Contreras Delgado (Caucasian, from Spain), hired into a role at Amgen the specific title of which is to be identified through discovery.

33. None of the foregoing individuals served as primary resources on Amgen's competitive intelligence accounts, covered therapeutic area breadth equivalent to Plaintiff's, or produced work product comparable in volume, scope, or strategic significance to Plaintiff's documented contributions.

34. David Leishman, an Amgen employee at all relevant times, was known to Plaintiff through prior professional and educational relationships. Leishman referred Plaintiff to the open position at Lifescience Dynamics late into their second year at KGI. During a period of Plaintiff's unemployment and active application to Amgen, Leishman traveled to Plaintiff's residence in Chino Hills, California, purportedly to inquire into Plaintiff's welfare. He later visits Plaintiff in his West Hollywood apartment attempting to meet his fiancé and they instead briefly go to The Belmont. Despite Leishman's position within Amgen and his personal knowledge of Plaintiff's qualifications and ongoing exclusion, no referral, recommendation, or substantive professional assistance of any kind was offered. This visit reflects Amgen's organizational awareness of Plaintiff's circumstances through its employee network and constitutes additional evidence of the coordinated pattern of exclusion alleged herein.

## IV. THE THIRTY-THREE PORTAL APPLICATIONS AND FRAUDULENT POSTING SCHEME

35. Between January 2024 and August 2024, Plaintiff submitted thirty-three (33) documented applications through Amgen's career portal for roles within Amgen's Commercial Data and Analytics ("CDnA") group and related commercial and analytical functions. True and correct screenshots of all 33 applications and their recorded dispositions are attached hereto as Exhibit A and incorporated herein by reference.

36. Each of the thirty-three (33) applications was submitted for a specific role for which Plaintiff met the minimum and preferred qualifications as published in the corresponding job posting, based on his documented educational credentials, competitive intelligence experience, data analysis and visualization skills, and life science consulting background.

37. All thirty-three (33) applications were returned with a recorded status of "No Longer Under Consideration" with no substantive explanation, no invitation to interview, no alternative referral, and no communication from any Amgen representative through the portal or any other official channel in connection with any of the applications.

38. The uniform disposition of thirty-three (33) applications — across multiple roles, departments, and qualification sets over an eight-month period — without a single interview invitation constitutes a pattern of conduct inconsistent with bona fide recruitment activity and consistent with the application of an unlawful screening mechanism, whether implemented through Amgen's Applicant Tracking System ("ATS"), through deliberate decisions by Amgen HR personnel, or through both.

39. During the same period, Amgen repeatedly reposted the same or substantially similar roles within CDnA and related groups under varying titles, department designations, or revised qualification criteria, each time following a prior rejection of Plaintiff's application for a materially identical role.

40. CDnA and related roles were additionally posted through Biospace.com under varying titles and department designations, creating an external parallel posting channel that obscured the relationship between postings Plaintiff had already applied to and been rejected from.

41. Amgen utilized Smith Hanley Associates, a specialized life sciences and pharmaceutical recruiting firm with a documented relationship with Amgen, as an alternative staffing pipeline for CDnA-adjacent roles. This parallel recruitment mechanism effectively bypassed Plaintiff's direct portal applications, removing him from the genuine candidate pool while maintaining the appearance of open and competitive recruitment.

42. The combination of blanket ATS rejections, repeated role repostings, external Biospace.com listings, and Smith Hanley Associates routing constitutes a pattern of deceptive job posting and recruitment practices through which the appearance of open recruitment was maintained while Plaintiff was systematically foreclosed from genuine consideration.

## V. THE GARNICA REFERRAL, SINHA CONTACT, AND ATS DENIAL DURING ACTIVE ENGAGEMENT

43. On or about February 13, 2024, Jose Manuel Garnica, Ph.D., MBA, Senior Director and International Value & Access Lead at Kite Pharma (jgarnica1@kitepharma.com), introduced Plaintiff via email to Jay Sinha, an Amgen employee (jsinha01@amgen.com) with experience in U.S. market access and pricing. A true and correct copy of the email chain documenting this introduction and the subsequent correspondence is attached hereto as Exhibit B and incorporated herein by reference.

44. On or about February 14, 2024, Sinha responded to the introduction, identified one open role at Amgen — a Senior Associate, Payer Contracting position (U.S. Remote) — and proposed a call with Plaintiff for February 20, 2024 between 2:00 p.m. and 4:00 p.m. Pacific Time. Sinha provided his direct personal cell phone number to Plaintiff.

45. Plaintiff confirmed interest in the role, agreed to the proposed call, and submitted his application for the Senior Associate, Payer Contracting position on or about February 15, 2024. Plaintiff notified Sinha of the submission and requested that Sinha review the application in advance of their scheduled call.

46. Sinha acknowledged receipt of the application.

47. On or about February 20, 2024, at approximately 1:26 a.m. Pacific Time, Plaintiff observed that his portal application for the Senior Associate, Payer Contracting position had been returned as denied — on the same day that Sinha and Plaintiff had a scheduled call. Plaintiff notified Sinha that the application had been denied and that the scheduled call was no longer necessary.

48. Sinha provided no explanation for the denial, offered no alternative role or referral, and did not communicate with Plaintiff again. The ATS denial occurred while Sinha, an Amgen employee with direct knowledge of Plaintiff's candidacy, had an active call scheduled with Plaintiff for that same day. This sequence is direct evidence of the disconnect between Amgen's informal employee engagement and its ATS-level screening decisions.

49. Prior to this introduction, Plaintiff had communicated with Garnica via LinkedIn regarding

potential Amgen employment opportunities. During that communication, Plaintiff explicitly directed Garnica not to forward Plaintiff's curriculum vitae, stating that it contained proprietary technology belonging to Ventura & Associates HTA Advisors LLC. Garnica acknowledged having already forwarded the curriculum vitae to his Amgen contact without Plaintiff's authorization. A true and correct copy of this LinkedIn communication is attached hereto as Exhibit C and incorporated herein by reference.

**VI. THE MORLEY CONTACT RELATED TO A PATIENT DATA MANAGER LISTING, EMPLOYER-INITIATED MEETING, AND ABANDONMENT**

50. Prior to August 2024, Plaintiff encountered Milora E. Morley, MPH ("Malora Morey"), an Amgen employee, at a career fair held at the University of California, Riverside. During that encounter, Morley indicated that Plaintiff was not a suitable candidate for a particular entry-level role.

51. On August 15, 2024, Morley responded to a LinkedIn InMail from Plaintiff and directed Plaintiff to contact her at her official Amgen email address, mmorley@amgen.com, to schedule a meeting. A true and correct copy of this communication is attached hereto as Exhibit D and incorporated herein by reference.

52. On August 19, 2024, Morley transmitted a formal calendar invitation from her official Amgen email address, scheduling an "Introduction Meeting: Malora and Nicholas" initially for August 20, 2024. Morley subsequently rescheduled the meeting on August 19 to Thursday, August 22, 2024, 1:05 p.m. to 1:30 p.m., Pacific Time, via Webex, Amgen's official video platform. A true and correct copy of this calendar invitation and rescheduling communication is attached hereto as Exhibit E and incorporated herein by reference.

53. In connection with the August 22 meeting, Plaintiff transmitted to Morley his curriculum vitae ("Amgen_Nicholas_A._Ventura_Resume.pdf") and his Consulting Brochure FY 2024, and expressed specific interest in a Patient Data Management role at Amgen. Plaintiff also stated he had been looking forward to interviewing for a position posted at Amgen in the preceding weeks and requested feedback on his resume. True and correct copies of these

communications are attached hereto as Exhibit F and incorporated herein by reference.

54. The August 22, 2024 meeting took place as scheduled.

55. During the August 22 meeting, Morley described her own professional career trajectory: she had developed a data analytics dashboard at Cedars-Sinai Medical Center, which she identified as the qualification basis for her hire at Amgen. This combined with the job listed served as initial snub against Ventura's potential attempts at the CS Health+ Accelerator.

56. Morley's described qualifications and career pathway — data analytics development experience in a healthcare institutional setting, leading directly to an Amgen hire — are substantively and materially identical to the professional qualifications, analytical skill set, and career trajectory documented in Plaintiff's curriculum vitae and employment history, including Plaintiff's data analysis and competitive intelligence work performed for Amgen through Lifescience Dynamics. The employee Amgen hired, Morley, described credentials that directly and materially mirrored those of the applicant Amgen excluded across thirty-three applications without a single interview.

57. At 1:12 p.m. on August 22, 2024, immediately following the meeting, Plaintiff emailed Morley requesting that she contact him directly at his cell phone number, (909) 342-8599. No call was received. No interview was offered. No referral was made. No substantive feedback was provided. All correspondence with Morley ceased without explanation.

58. August 22, 2024, constitutes the operative last adverse action date for purposes of the continuing violations doctrine under FEHA. All FEHA claims are timely as measured from this date and within the one-year period following the CRD's issuance of the Right to Sue letter on October 30, 2025.

## VII. ECONOMIC AND PERSONAL HARM TO PLAINTIFF

59. Amgen's sustained pattern of exclusion deprived Plaintiff of employment in roles within CDnA and related functions that carried published base compensation ranging from approximately $120,000 to $170,000 per year, in addition to bonus, equity, and benefits. The cumulative lost compensation from 2019 through August 2024 represents a compounding economic loss, as each year of exclusion foreclosed the career progression and seniority advancement that employment would have generated.

60. Plaintiff's business enterprise, Ventura & Associates HTA Advisors LLC, was materially harmed by Plaintiff's exclusion from the life sciences industry employment ecosystem. Amgen's organizational reach, its relationships with ZS Associates, Inc. and industry recruiting firms, and the pattern of exclusion reflected herein contributed to the foreclosure of client relationships and revenue opportunities that Plaintiff's firm would otherwise have been positioned to develop.

61. Plaintiff has suffered and continues to suffer severe emotional distress, including of his *documented mental health issues to perceived disability* (mild-to-moderate Depression and Anxiety), as a direct and proximate result of Defendants' sustained, knowing, and coordinated exclusion over a five-year period. This harm is reflected in medical records, treatment history, and the documented functional impairment of Plaintiff's professional and personal life during the relevant period.

## CAUSES OF ACTION

## COUNT I

## DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF RACE, NATIONAL ORIGINM AND DISABILITY IN VIOLATION OF FEHA

(California Government Code §§ 12940(a), 12940(m))

(Against Defendant Amgen, Inc.)

62. Plaintiff incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

63. At all relevant times, Plaintiff was a member of the following protected classes under FEHA: (a) race and national origin — Hispanic/Latino; and (b) disability — mild-to-moderate Depression and Anxiety, constituting a mental disability within the meaning of California Government Code §§ 12926(j) and 12926.1.

64. Plaintiff applied for and was objectively qualified for each of the thirty-three (33) positions to which he submitted applications through Amgen's career portal between January 2024 and

August 2024, meeting or exceeding the minimum and preferred qualifications published for each role.

65. Defendant Amgen denied Plaintiff an interview or any employment consideration for all thirty-three (33) applications, returning each with a disposition of "No Longer Under Consideration" with no substantive explanation.

66. The inference of unlawful discrimination arises from the following circumstances, individually and collectively: (a) Plaintiff's qualifications materially exceeded those of non-Hispanic, non-disabled colleagues hired into comparable roles; (b) colleagues who worked alongside or subordinate to Plaintiff — including Daisy Haight, Ezequiel Heredia, Maria Angeles Contreras Delgado, and Tim Tran — were hired while Plaintiff was systematically excluded; (c) Defendant Amgen's agents had direct, personal, and sustained knowledge of Plaintiff's qualifications through the Lifescience Dynamics engagement; (d) the pattern of exclusion spans more than five years and thirty-three applications without a single interview; (e) Defendant Amgen hired Milora E. Morley, whose described credentials directly mirrored Plaintiff's, while denying Plaintiff any consideration for equivalent roles; and (f) Amgen's own employee Jay Sinha directed Plaintiff to apply for a specific role, scheduled a call, and then ceased all communication after the ATS denied Plaintiff's application on the morning of that scheduled call.

67. The blanket exclusion across thirty-three applications is additionally consistent with the application of unlawful disability-based screening criteria, whether through ATS filtering mechanisms, deliberate HR personnel decisions, or both, in violation of California Government Code § 12940(a) and § 12940(m).

68. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, lost career progression, harm to professional reputation, emotional distress, and exacerbation of his Disability, in amounts to be proven at trial.

69. The conduct of Defendant Amgen, and its agents acting within the scope of their employment, was oppressive, fraudulent, and malicious within the meaning of California Civil Code § 3294, entitling Plaintiff to an award of punitive damages.

**COUNT II**

**RACE DISCRIMATION IN THE MAKING AND**

**ENFORCEMENT OF EMPLOYMENT CONTRACTS**

(42 U.S.C. § 1981)

(Against All Defendants)

70. Plaintiff incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

71. Section 1981 prohibits racial discrimination in the making, performance, modification, and enforcement of contracts, including the right to make and enforce employment contracts. 42 U.S.C. § 1981(b).

72. Plaintiff is Hispanic/Latino, a racial minority within the meaning of 42 U.S.C. § 1981.

73. Plaintiff had a direct pre-existing contractual and quasi-contractual relationship with Defendant Amgen through the Lifescience Dynamics consulting engagement, during which Plaintiff produced work product received and utilized by Amgen's agents, including Defendants Drasen and Kanade, over an extended period.

74. Defendants intentionally discriminated against Plaintiff on the basis of race in refusing to make or facilitate an employment contract with Plaintiff, while simultaneously benefiting from Plaintiff's contractual labor through the Lifescience Dynamics arrangement, and hiring non-Hispanic individuals with lesser qualifications into equivalent or similar roles.

75. Defendants Drasen and Kanade, acting individually and within the scope of their Amgen employment, each had direct knowledge of Plaintiff's race and qualifications, and actively participated in or ratified decisions that denied Plaintiff employment consideration based on race.

76. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered compensatory damages including lost wages, lost career progression, and emotional distress, in amounts to be proven at trial, together with punitive damages as permitted under

42 U.S.C. § 1981a.

**COUNT III**

**CONSPIRACY TO DEPRIVE CIVIL RIGHTS**

(42 U.S.C. § 1985(3))

(Against All Defendants)

77. Plaintiff incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

78. Defendants Amgen, Drasen, Kanade, and Does 1–50, and each of them, conspired with one another for the purpose of depriving Plaintiff, a Hispanic/Latino individual, of the equal protection of the laws and equal privileges and immunities under the laws, motivated by class-based discriminatory animus against Plaintiff's race and national origin.

79. In furtherance of this conspiracy, Defendants and each of them engaged in the following overt acts, among others:

a. systematically excluding Plaintiff from employment consideration across thirty-three (33) documented applications while possessing direct knowledge of his qualifications;

b. hiring lesser-qualified non-Hispanic colleagues, mentees, and subordinates into roles Plaintiff applied for and was qualified to fill;

c. exploiting Plaintiff's intellectual labor through the Lifescience Dynamics consulting engagement without facilitating direct employment;

d. routing employment opportunities through Smith Hanley Associates and Biospace.com in a manner that bypassed Plaintiff's direct applications;

e. allowing an ATS denial to issue on the morning of a scheduled call between an Amgen employee and Plaintiff, without any notice or communication to Plaintiff;

f. initiating employer-level contact with Plaintiff through official Amgen channels

in August 2024 and abandoning that engagement without referral or explanation; and

g. permitting Amgen employees with personal knowledge of Plaintiff's circumstances and exclusion to take no remedial action.

80. As a direct and proximate result of this conspiracy, Plaintiff suffered deprivation of his civil rights and the economic and personal harms described herein, in amounts to be proven at trial.

**COUNT IV**

**UNFAIR AND FRAUDULENT BUSINESS PRACTICES**

(California Business and Professions Code §§ 17200, 17500)

(Against Defendant Amgen, Inc.)

81. Plaintiff incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

82. Defendant Amgen's conduct constitutes unlawful business practice because it violates FEHA (California Government Code § 12940) and 42 U.S.C. § 1981, as alleged in Counts I and II. Each violation of those statutes constitutes a predicate unlawful act under Business and Professions Code § 17200.

83. Defendant Amgen's conduct constitutes fraudulent business practice because the publication of CDnA and related job postings — and their reposting under varying titles and department designations following each of Plaintiff's rejections — was likely to deceive, and did deceive, a reasonable applicant in Plaintiff's position into believing that each posting constituted a genuine and open employment opportunity available to qualified portal applicants. The concurrent routing of candidates through Smith Hanley Associates and Biospace.com further evidences that the portal postings did not represent bona fide recruitment for the positions as advertised.

84. Defendant Amgen's conduct constitutes unfair business practice because it threatens the policies of FEHA and 42 U.S.C. § 1981, violates the spirit of California's equal

employment opportunity laws, and causes harm to Plaintiff that is not outweighed by any legitimate benefit to Defendant.

85. As a result of Defendant's unfair and fraudulent business practices, Plaintiff lost money and property within the meaning of California Business and Professions Code § 17204, including lost wages, lost business opportunities for Ventura & Associates HTA Advisors LLC, and other economic losses to be proven at trial.

86. Plaintiff is entitled to restitution and injunctive relief under Business and Professions Code § 17203, including an injunction requiring Defendant Amgen to audit and reform its ATS screening practices, CDnA posting procedures, and recruiting firm engagement policies to ensure compliance with equal employment opportunity law.

## COUNT V

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

(California Common Law)

(Against All Defendants)

87. Plaintiff incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

88. Plaintiff had prospective economic relationships with Amgen that carried a probability of future economic benefit, including: (a) the reasonable expectation of direct employment arising from his documented professional relationship with Amgen through the Lifescience Dynamics engagement; (b) the prospective employment relationship arising from Jay Sinha's active engagement — a scheduled call, a specific open role, and Sinha's request that Plaintiff apply — which was disrupted by the ATS denial on the morning of the scheduled call; and (c) the prospective employment relationship arising from Milora Morley's employer-initiated contact, formal calendar invitation, conducted meeting, and post-meeting correspondence regarding the Patient Management role.

89. Defendants had actual knowledge of each of these prospective relationships: Defendants Drasen and Kanade from the Lifescience Dynamics engagement; Jay Sinha from his active

scheduling of a call and direction that Plaintiff apply; and Morley from the employer-initiated August 2024 contact.

90. Defendants engaged in intentional acts — independently wrongful under FEHA and 42 U.S.C. § 1981 as alleged in Counts I and II — designed to disrupt and which did disrupt each of these prospective economic relationships, including by: (a) failing and refusing to facilitate employment despite direct knowledge of Plaintiff's qualifications; (b) allowing an ATS denial to issue on the morning of a scheduled call without communication; and (c) initiating and then abandoning the August 22, 2024 engagement without referral or explanation.

91. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered economic harm including lost wages, lost business opportunities, and lost career advancement, in amounts to be proven at trial.

## **COUNT VI**

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(California Common Law)

(Against All Defendants)

92.Plaintiff incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

93. The conduct of Defendants, collectively and as described herein, was outrageous in character and exceeded all bounds usually tolerated in a civilized community. Specifically:

a. Defendants exploited Plaintiff's intellectual labor and industry expertise through a sustained consulting relationship while contemporaneously and covertly foreclosing him from the direct employment their agents knew he sought;

b. Defendants hired Plaintiff's mentees, subordinates, and lesser-qualified colleagues in his place across multiple hiring cycles spanning more than five years;

c. Defendants maintained fraudulent job posting practices designed to perpetuate a

false appearance of opportunity while systematically excluding Plaintiff;

d. an Amgen employee scheduled an active call with Plaintiff regarding a specific open role, directed Plaintiff to apply, and then allowed the ATS to deny the application on the morning of that call without any communication; and (e) Defendant Amgen's agent initiated formal employer-level contact with Plaintiff, rescheduled and conducted an introduction meeting during which career credentials mirroring Plaintiff's own were described as the basis for hire at Amgen, and then ceased all communication without explanation, offer, or referral.

e. Defendant Amgen's agent initiated formal employer-level contact with Plaintiff, rescheduled and conducted an introduction meeting during which career credentials mirroring Plaintiff's own were described as the basis for hire at Amgen, and then ceased all communication without explanation, offer, or referral.

94. Defendants acted with intent to cause, or with reckless disregard of the probability of causing, emotional distress to Plaintiff. Defendants' awareness of Plaintiff's ongoing unemployment, his active applications, and his prior professional service to Amgen's accounts makes the emotional consequences of systematic exclusion and false opportunity foreseeable.

95. Plaintiff did in fact suffer severe emotional distress as a direct and proximate result of Defendants' conduct, including exacerbation of his documented Disability (Depression and Anxiety), psychological harm, and loss of professional identity, dignity, and standing, as evidenced by medical records, treatment history, and documented functional impairment.

96. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff is entitled to general and special damages, and to punitive damages pursuant to California Civil Code § 3294, in amounts to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nicholas A. Ventura respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

1. Compensatory damages for lost wages, lost benefits, and lost career progression from 2019 through the date of judgment, in amounts to be proven at trial;

2. Compensatory damages for future lost earning capacity and diminished career trajectory in the life sciences industry, in amounts to be proven at trial;

3. General damages for emotional distress, psychological harm, and exacerbation of Plaintiff's documented Disability, in amounts to be proven at trial;

4. Restitution of all economic benefit unjustly obtained by Defendant Amgen through its exploitation of Plaintiff's intellectual labor through the Lifescience Dynamics consulting engagement without facilitating direct employment, pursuant to California Business and Professions Code § 17203;

5. Injunctive relief pursuant to California Business and Professions Code § 17203, including without limitation an order requiring Defendant Amgen to: (a) audit its Applicant Tracking System screening criteria for CDnA and related roles for compliance with FEHA; (b) reform its CDnA recruiting and posting practices; and (c) implement equal employment opportunity compliance measures with respect to its relationships with Smith Hanley Associates and similar recruiting vendors;

6. Punitive damages against all Defendants pursuant to California Civil Code § 3294 and 42 U.S.C. § 1981a, based on the oppressive, fraudulent, and malicious nature of Defendants' conduct;

7. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff Nicholas A. Ventura hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*Nicholas A. Ventura*

Nicholas A. Ventura

Plaintiff Pro Se

16232 Promontory Road

Chino Hills, California 91709

(909) 342-8599

venturaanicholas@gmail.com